**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, and United States Equal Employment Opportunity Commission, Plaintiffs,**

v.

**K F C SERVICES, INC., d/b/a Kentucky Fried Chicken, Defendant.**

**No. 78 CV 1369.**

United States District Court, E. D. New York.

Aug. 31, 1982.

Leroy D. Clark, Gen. Counsel, E. E. O. C., Washington, D. C. and Peter Van Schaick and Cherie A. Gaines, Regional Attys., E. E. O. C., New York City by Virginia Waters, New York City, for plaintiff E. E. O. C.

Breskin & Gunsberg, Detroit, Mich. by Richard A. Leasia, Detroit, Mich., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

The complaint in this action was filed by the Department of Labor and charged defendant ("KFC") with violations of the minimum wage and maximum hour provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207 ("FLSA"), and of the Equal Pay Act amendments thereto, 29 U.S.C. § 206(d)(1)–(4). KFC and the Department of Labor settled the minimum wage and maximum hour claims but not the Equal Pay Act claim, which remained contested after responsibility for its enforcement had passed to the Equal Employment Opportunity Commission ("EEOC").[1] KFC has now moved for judgment on the pleadings, F.R. Civ.P. 12(c). Because matters outside the pleadings have been submitted and considered, the motion has been treated by the Court and the parties as one for summary judgment.

The substantive issue under the equal pay provisions is whether KFC has

"discriminate[d] ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which [it paid] wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ...." 29 U.S.C. § 206(d)(1).

KFC is engaged in the business of selling prepared food to the public. It is undisputed that KFC paid the employees here involved equal amounts of cash as wages. The EEOC claim of unequal pay in violation of the Equal Pay Act arises solely from the fact that KFC required its employees to wear uniforms at work. Counter-service employees, who allegedly were chiefly females, were provided with several pants suit type uniforms by KFC which each employee was responsible for cleaning. Kitchen workers, who were chiefly males, were required to wear white linen uniforms provided by an outside company under contract with KFC and cleaned regularly by that company under its contract.

Emphasizing as evident disparity that male kitchen workers did not spend any of

1. See 44 Fed.Reg. 39304 (1979).

their pay to clean their uniforms while female counter-service employees did, EEOC argues that the net result was a lower rate of pay to the latter. On the employees' behalf, therefore, EEOC seeks recovery of additional amounts to equalize the claimed past pay differential, even though KFC during the Wage and Hour Division's investigation discontinued the former linen uniforms and laundry service for kitchen employees and provided them with shirts styled like the pants suits, which they then became responsible for cleaning. This change according to EEOC assertedly violated the "no equalization downward" provision of 29 U.S.C. § 206(d)(1).

The narrow issue for determination is whether the clean uniforms provided KFC's kitchen workers under the former contract with the company constituted "wages" within the meaning of 29 U.S.C. § 206(d)(1). For the reasons that follow, the Court holds that they did not, and that the present claim must be dismissed as wholly without merit.

The FLSA contains the following definition of "wages":

> "Wages paid to any employee includes the reasonable cost, determined by the Administrator [of the Wage and Hour Division], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m).

There is no indication in the statute that this definition does not apply to "wages" where the equal pay provisions employ that term. Indeed, the legislative history discloses a congressional intent that the definitions and interpretations previously developed under the FLSA should be carried forward to "apply" under the Equal Pay Act. H.R.Rep.No.309, 88th Cong., 1st Sess. (1963) (Supplemental Views, Item 5), *reprinted in* [1963] U.S.Code, Cong. & Admin. News 687, 690. Furthermore, prior to the executive reorganization referred to *supra,* the Labor Department's Wage and Hour Administrator expressed such a view in his interpretive bulletin under the Act, 29 C.F.R. § 800.110 (1979), which the Court of Appeals recently endorsed in *Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578, 587 & n.70 (D.C.Cir.1980) (*Laffey II*), by modifying its prior interpretation of "wages" under the Equal Pay Act.

Assuming that the clean uniform service KFC provided to its kitchen workers could be considered a "facility" within § 203(m), it must nonetheless be recognized that the statutory term "wages" hardly presents the Court with a clean slate. The Administrator has issued detailed interpretive bulletins which discuss what, besides cash and checks, may be considered "wages" in the three FLSA contexts where determining an employee's wage or wage rate is critical: minimum wage (Part 531); overtime pay (Part 778); and equal pay (Part 800). Such bulletins have long been accorded deference in the courts, *e.g., Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Laffey v. Northwest Airlines, supra; Usery v. Columbia University,* 568 F.2d 953, 959 & n.9 (2d Cir. 1977); and it is no surprise that the parties have closely disputed the significance of various provisions to show that the Administrator's interpretations permit, if not compel, the result each seeks.

Essentially KFC contends that the provisions concerning "wages" in the minimum wage bulletin, Part 531, mean that the cost to it of providing laundered uniforms to its kitchen workers may not be considered part of those employees' wages for equal pay purposes. It urges that 29 C.F.R. § 800.112 "expressly incorporates [the] definitions and interpretations [of the Part 531 bulletin] into the section 6(d) [equal pay] regulatory scheme." Def. Reply Memo at 9. In that bulletin, which contains provisions for determining when a "facility" may be included in an employee's wages for the purposes of complying with the minimum wage requirements of § 6, the Administrator has declared that

> "[t]he cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employ-

er will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.-3(d)(1).

Furthermore, expressly set out as one "illustrative" facility that the Administrator has "found ... to be primarily for the benefit of the employer" is the "cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform." *Id.,* § 531.-3(d)(2)(iii). See also *id.,* § 531.32(c). KFC points out that the EEOC has never directly questioned that KFC provided the kitchen workers with laundered uniforms primarily for its own benefit.

In addition, in keeping with this administrative interpretation of "wages," courts generally have not permitted the cost of providing or maintaining uniforms to be included as part of an employee's compensable wage for computing the minimum wages owed, *e.g., Schultz v. Hinojosa,* 432 F.2d 259, 266–67 (5th Cir. 1970); *Marshall v. Krystal Co.,* 467 F.Supp. 9, 13 (E.D.Tenn. 1978); *Walling v. New Orleans Private Patrol Service,* 57 F.Supp. 143, 148–49 (E.D. La.1944), or for computing the "regular rate," 29 U.S.C. § 207(a), on which an award of overtime may be based, *Masters v. Maryland Management Co.,* 493 F.2d 1329, 1334 (4th Cir. 1974).

In opposition, EEOC argues that the statute's definition of "wages" is ambiguous, and that this permits the Court to construe the term broadly, and consistently with the Equal Pay Act's remedial purposes, to include the laundry services KFC indirectly provided its kitchen workers with their clean uniforms. EEOC points out further

that portions of the Administrator's bulletins support its position that "wages" for equal pay purposes encompasses more kinds of compensation than it does in the minimum wage and overtime compensation contexts. See 29 C.F.R. §§ 800.110; 800.113; 531.27(a), (b).

Additionally, EEOC vigorously disputes KFC's contention that this case may be determined against plaintiff by the declaration in 29 C.F.R. § 531.3(d)(2)(iii) that the costs of laundering employer-provided uniforms will not be recognized as "wages." It argues that the prohibition is primarily directed at a matter unrelated to equal pay concerns. As the Administrator recognized in discussing how wage payments can be made,

"[i]t appears to have been the clear intention of Congress to protect the basic minimum wage and overtime compensation required to be paid to the employee by sections 6 and 7 of the Act from profiteering or manipulation by the employer in dealing with the employee. Section 3(m) of the Act and Subpart B of this part [531, including § 531.3(d)(2) ] accordingly prescribe certain limitations and safeguards which control the payment of wages in other than cash or its equivalent. . . . These provisions, it should be emphasized, do not prohibit payment of wages in facilities furnished either as additions to a stipulated wage or as items for which deductions from the stipulated wage will be made; they prohibit only the use of such a medium of payment to avoid the obligation imposed by sections 6 and 7." [2] 29 C.F.R. § 531.28.

Moreover, the wording of § 800.112—"inclusion as part of the wages *required* by the Act" —seems directed only to the computation of the minimum amount, not to calculation of the value of a facility that might be considered an addition to the wage.

Lastly, defendant has submitted a copy of a letter from the Department of Labor indicating that settlement of the minimum wage and maximum hour claims was reached without attributing any value to the laundering service. The settlement expressly provided, however, that it was without prejudice to the remaining equal pay claim.

**2.** 29 C.F.R. § 800.112, on which defendant relies, by itself does not require a different result from that suggested by EEOC. The section provides that the "[r]egulations under which the reasonable cost or fair value of [non-cash] facilities furnished may be computed for inclusion as part of the wages required by the Act are ... contained in Part 531." Although defendant argues this necessarily includes the § 531.3(d)(2)(iii) exclusion, it plainly also includes § 531.28, which indicates that the reach of Part 531 is no greater than the evil it was designed to avert.

Plainly, the chief danger the § 531.-3(d)(2)(iii) exclusion was designed to avert was the frequent reduction in employees' cash wages that would have resulted if employers could claim their employees were receiving a bona fide cash substitute in the guise of a clean work uniform.

In essence, EEOC argues that the limitation on the definition of wages should not be applied when the reasons for promulgating it are not present, and that therefore the value of the cleaning given the kitchen workers' uniforms may be included in their wages. This reasoning must be rejected in light of the Administrator's clear decision to apply the "primary benefit" rule to the definition of wages for equal pay purposes, and the acceptance of this interpretation by the Court of Appeals in *Laffey v. Northwest Airlines, Inc., supra.*

In defining the meaning of "wages" under the equal pay provisions at 29 C.F.R. § 800.110, the Administrator declared that:

"The term 'wages' used in section 6(d)(1) of the Act is considered to have the same meaning it has elsewhere in the Act. As a general rule, in determining compliance with the equal pay provisions, the wages paid by the employer will be calculated pursuant to the same principles and procedures as have traditionally been followed in calculating such wages for purposes of determining compliance with the minimum wage provisions of the Act.... [In contrast to vacation and holiday pay and premium pay for weekend work,] payments made by an employer to an employee which do not constitute remuneration for employment are not 'wages' to be compared for equal pay purposes under section 6(d) of the Act. Examples are payments related to maternity, and such reasonable payments for reimbursable expenses of traveling on the employer's business as are discussed in § 778.217 of this chapter [V]."

Section 778.217(b)(3) treats an employer's reimbursement of traveling expenses as a payment that may be excluded from the "regular rate" on which overtime compensation is based. Traveling expenses, how-ever, are only one example of those the Administrator has stated are the kinds of payments not includible in the regular rate. Immediately preceding traveling expenses in this "illustrative rather than exhaustive" list, 29 C.F.R. § 778.217(b), is the reimbursement of the "actual or reasonably approximate amount expended by an employee in ... laundering ... uniforms or special clothing which his employer requires him to wear." *Id.,* § 778.217(b)(2).

The failure of the Administrator to specify laundry costs while referring to traveling expenses as one kind of payment which does not constitute "wages" for equal pay purposes just as it does not for overtime compensation purposes, cannot be taken to signify an intent to include laundry costs as part of the remuneration to be compared under the equal pay provisions. Traveling expenses are referred to only as an "example" of the kind of payment which is not a "wage." Rather, the clear intent of § 800.-110's reference to § 778.217, though it is not perfectly expressed, is to remind those seeking its guidance that fuller, although still not exhaustive, examples of what is not a wage may be found in that provision.

Significantly, it was consideration of the regulatory provisions discussed herein that persuaded the Court of Appeals in *Laffey v. Northwest Airlines, Inc., supra,* to modify its prior ruling at 567 F.2d 429, 455 & n.175 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (*Laffey I*), which held that "wages" for equal pay purposes included a uniform cleaning allowance, based upon the simple finding that such costs had been "customarily furnished" to male employees. In deciding that the "primary benefit" rule also had to be applied in determining whether the allowance truly was part of wages, the court in *Laffey II* stated:

"In recognition of the Administrator's statutory role in the area of wage regulation and the expertise he has developed therein, we must accord deference to the construction he has placed on the congressional language defining 'wage.' Exclusion from the concept of wages, for

equal pay purposes, of lodging and other facilities and services that primarily benefit the employer rather than the employee is indisputably a reasonable interpretation, and one that comports with everyday usage of 'wage.' It does not suffice, as we thought in *Laffey I,* that the facility or service merely have been 'customarily furnished' by the employer; *it must also primarily serve the interest of the employee.* That we wish to make clear for the future." 642 F.2d at 588 (emphasis in original; footnotes omitted).

The Court of Appeals' changed analysis of whether a cleaning allowance was part of some employees' "wages" did not alter the court's conclusion that payment of the allowance in that case violated the Act. The court rejected the argument that Northwest's cleaning allowance paid only to male attendants truly benefited the employer and not primarily the employees.

"While a cleaning allowance provided all employees would not ordinarily amount to a wage, the strictly sex-based limitation on its availability exposes it as simply another supplement to male salaries." 642 F.2d at 589.

This conclusion aids plaintiff far less than appears at first blush. Here plaintiff has wholly failed to show even that any fact issue exists requiring further discovery or trial as to whether clean uniforms provided to KFC's kitchen workers in fact primarily benefited KFC and not the kitchen workers. EEOC's position is undercut by the affidavit of Wage and Hour Division Compliance Officer LeMar, submitted in opposition to the present motion, which purported to establish the following facts based on LeMar's extensive visits and interviews at every one of the 25 KFC outlets involved in this suit: clean white linen uniforms were provided KFC kitchen workers while no clean uniforms were provided its counter-service employees, and, with one exception, the counter-service employees were female and the kitchen workers, "with very few, if any, exceptions," were male. The "exceptions" to a strict male/female hiring pattern acknowledged in this affidavit reveal the flaw in EEOC's argument that the decision in *Laffey II, supra,* squarely controls the outcome here.

In the *Laffey* litigation, no woman received the cleaning allowance while every man did. Those facts prompted the court to rule that the payment was solely sex-based and therefore must have been for the recipients' benefit, and not primarily the employer's. Here, it is perfectly obvious that the clean uniforms were not provided to men as a class but to kitchen workers. It is equally clear that the sex of the workers was wholly irrelevant to the choice of uniform. White linen is appropriate for kitchen workers precisely because such uniforms are easily and thoroughly cleaned. If nothing else, the use of such uniforms symbolizes and reinforces in the minds of both wearer and observer the employer's commitment to the careful and sanitary preparation and handling of customers' food. It would be absurd for EEOC to argue that such a uniform, and particularly one that is provided clean, was not primarily for the employer's benefit. Furthermore, the exceptions noted by LeMar demonstrate that unlike *Laffey,* it cannot be said in this case that the cleaning was primarily for the employees' benefit by reason of any deliberate policy on KFC's part to provide clean uniforms only to men and not women. There is no contention that KFC kept any females from working in the kitchen or, conversely, any male from working in the counter-service area. The cost to KFC of providing clean uniforms to kitchen workers was a facility furnished those workers primarily for KFC's benefit, regardless of the sex of the workers.

Accordingly, summary judgment dismissing the complaint is granted, since the value of the cleaning performed on the uniforms provided KFC's kitchen workers was not part of the "wages" KFC paid.

SO ORDERED.

The Clerk of Court is directed to enter judgment dismissing the complaint, and to forward copies of this memorandum order to counsel for the parties.