Francisco SOLER, et al., Plaintiffs,

v.

G & U, INC., Charles Gratz, d/b/a
Charles Gratz Farm, Defendants.

Jann S. FLING, et al., Plaintiffs,

v.

PEAT–GRO FARMS, INC., Defendant.

Pablo LIVAS, et al., Plaintiffs,

v.

BIERSTINE FARMS, INC., Defendant.

Gilberto GONZALEZ, et al., Plaintiffs,

v.

CEDAR VALLEY GROWERS,
INC., Defendant.

Freddy VALENTIN, et al., Plaintiffs,

v.

Raymund MYRUSKI, Defendant.

Cecilio ENCARNACION, et
al., Plaintiffs,

v.

W.K.W. FARMS, INC., Defendant.

SOLAR, et al., Plaintiffs,

v.

U.S. SECRETARY OF LABOR, et
al., Defendants.

G & U, INC., et al., Plaintiffs,

v.

U.S. DEPARTMENT OF LABOR, et
al., Defendants.

Nos. 78 Civ. 6252 (CHT), 78 Civ. 6257
(CHT)–78 Civ. 6261 (CHT), 80 Civ.
3506 (CHT) and 83 Civ. 9122 (CHT).

United States District Court,
S.D. New York.

June 14, 1985.

Farmworker Legal Services of New York, Inc., Newburgh, N.Y., for plaintiffs; Howard Schell Reilly, of counsel.

Keane & Beane, P.C., White Plains, N.Y., for defendants G & U, Inc., Charles Gratz, Bierstine Farms, Inc., Cedar Valley Growers, Raymond Myruski, and W.K.W. Farms, Inc.; Edward F. Beane, Richard L. O'Rourke, of counsel.

Rudolph W. Giuliani, U.S. Atty. S.D. of N.Y., New York City, N.Y., for the Government; Frederick M. Lawrence, Asst. U.S. Atty., Francis X. Lilly, Jay S. Berke, Theodore T. Gotsch, of counsel.

## OPINION

TENNEY, District Judge.

The plaintiffs, approximately 100 migrant farmworkers, instituted this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (1982) ("FLSA"), against six farm owners in Orange County, New York ("defendants").[1] The plaintiffs seek to recover wage deductions made by the defendants for housing provided to the migrant workers in the defendants' labor camps, during 1978–1983 growing seasons. The plaintiffs claim that by deducting housing costs, the growers violated the minimum wage provisions of the FLSA. *See* 29 U.S.C. § 206.

In a prior decision, this Court stayed the proceedings before it, pending an administrative hearing and a final determination by the Administrator ("Administrator") of the United States Department of Labor ("Labor Department"). *See* 477 F.Supp. 102 (S.D.N.Y.1979).[2] In November 1983, the Administrator issued his final decision. The plaintiffs and defendants now seek judicial review of that decision under the Administrative Procedure Act, 5 U.S.C. § 706(2) (1982) ("APA"), and both move for summary judgment under Federal Rule of Civil Procedure ("Rule") 56(c).[3] The government requests that both motions for summary judgment be denied, and that the Administrator's decision be affirmed in all respects.

The plaintiffs argue, *inter alia*, that no housing costs should be computed as part of their wages because the housing in question was furnished primarily for the benefit and convenience of the growers. The defendants argue that the deductions for housing costs were appropriate, and that— even if the deductions were inappropriate— under the doctrines of statutory and equitable estoppel, the growers should not be held liable for compensatory or liquidated damages.

---

1. The former United States Secretary of Labor, Raymond J. Donovan, and the United States Department of Labor are also defendants in this action, and are hereinafter referred to collectively as the "government."

2. For a more detailed history of this case, see 568 F.Supp. 313 (1983) and 86 F.R.D. 524 (1980).

3. Although the plaintiffs moved for partial summary judgment, the disposition of their motion resolves the entire action. For simplicity, the Court refers to the plaintiffs' motion herein simply as a motion for summary judgment. It should also be noted that in their motion, the plaintiffs raised numerous issues. In light of this decision, it was not necessary to address all of the issues raised by the plaintiffs.

After careful consideration of the extensive record in this case, the Court concludes that the housing in question was furnished primarily for the benefit and convenience of the growers, and, therefore, housing costs may not be included as part of the plaintiffs' wages.[4] If housing were not provided, the growers would not be able to secure an adequate workforce to operate their farms. Although there are benefits on both sides of the ledger, the benefit to the growers clearly outweighs the benefit to the workers.

The Court rejects the defendants' arguments concerning estoppel, and rejects the government's request that the Administrator's decision be affirmed in all respects. For the reasons set forth below, summary judgment is granted in favor of the plaintiffs.

### Background

The defendants in this action are engaged in the business of growing and harvesting crops such as onions, lettuce, and celery.[5] They employ migrant workers on a seasonal basis and pay minimum wages on an hourly basis.[6] The growers provide housing for most of the migrant workers while they are employed on the growers' farms.

The record shows that there are not enough workers available in the neighboring area to satisfy the growers' need for labor. In addition, the record shows that if housing were not provided it is unlikely the migrant workers would be able to obtain off-site housing. Both sides agree that the migrant workers could not afford to work for the growers if housing were not provided.[7]

The record also indicates that the housing[8] in the migrant labor camps is generally of poor quality: many buildings are structurally unsound, and the premises are often unsanitary; numerous buildings have no indoor toilets, and some housing has no indoor plumbing at all. The facilities are often overcrowded and lack proper light and ventilation. Workers generally have no access to telephones, laundromats, shopping centers, or recreational areas.

The minimum wage provisions of the FLSA were extended to include agricultural workers in 1978. Prior to that time, on-site housing had always been provided by the defendants without charge. When the FLSA became applicable to farmworkers, however, the defendants began to charge the migrant workers for the housing provided. From 1978 to 1983, the growers charged between $8.00 and $12.50 a week for the housing. The defendants generally deducted $.25 per hour from the cash wages of each worker for whom lodging was provided.

The FLSA, and the Regulations adopted thereunder, require that all covered employees[9] be paid a minimum wage. *See* 29 U.S.C. § 206(a) (1982); 29 C.F.R. § 531

---

**4.** The record in this case is quite voluminous. The Administrative Law Judge ("ALJ") conducted a hearing in which 26 witnesses testified. There were 29 days of testimony. The Administrator noted in his decision that all parties were represented by counsel, had the opportunity to call and examine witnesses, and were free to present evidence. *See* Adm.Dec. at 3.

**5.** Except to the extent indicated, the facts set forth in this opinion are uncontroverted or are derived from the findings of the Administrator, or the findings of the ALJ that were adopted by the Administrator.

**6.** As previously noted, this action involves approximately 100 migrant farmworkers as plaintiffs. This number does not comprise all the migrant farmworkers employed by the defendants since 1978.

Although the discussion in this Opinion is framed in terms of migrant farmworkers generally, since all plaintiffs are migrant farmworkers, the factors discussed are, of course, applicable to the plaintiffs.

**7.** See Plaintiffs' 3(g) Statement ¶ 35, and Defendants' 3(g) Statement ¶ 15.

**8.** The type of housing provided ranged from cabins designed for one person, to dormitory-type facilities designed to accommodate a number of people.

**9.** It is undisputed that the plaintiffs in the instant action are covered employees under the FLSA.

(1984).[10] The FLSA and the pertinent Regulations provide that the wage paid to an employee may include the reasonable cost to the employer of furnishing an employee with board, lodging, or other facilities. *See* 29 U.S.C. § 203(m);[11] 29 C.F.R. §§ 531, 516. However, the Regulations also provide that "[t]he cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.-3(d)(1).

◼ The crucial question in this case is whether, under the FLSA and its Regulations, the defendants may include the cost of housing as part of the plaintiffs' minimum wage or whether the defendants are prohibited from doing so under the convenience-of-the-employer doctrine. The Administrator concluded that the defendants were entitled to treat the cost of housing as part of the wage paid to the plaintiffs. Because the Administrator failed to consider all the relevant factors, however, the Administrator's decision must be set aside. Based on the record before the Administrator, the plaintiffs are entitled to judgment as a matter of law.

## *Discussion*

### I. STANDARD OF REVIEW

#### A. *Summary Judgment*

◼ Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c); *see Heyman v. Commerce and Ind. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); 6 J. Moore, W. Taggart and J. Wicker,

Moore's Federal Practice ¶ 56.15 (1.–0) (2d ed. 1983). The party moving for summary judgment must show that there are no material facts in dispute. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980). Summary judgment, however, will not be denied merely because of conclusory allegations or denials made by the opposing party; concrete particulars must be set forth in opposition to the motion. *See Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983); *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978).

◼ Summary judgment may be granted upon judicial review of an administrative decision when there is no genuine issue as to any material fact and the only dispute involves a question of law. *See Doyle v. Behan*, 670 F.2d 535, 539 (5th Cir.1982); *Davis Bros., Inc. v. Marshall*, 522 F.Supp. 628, 632 (N.D.Ga.1981). In the case at bar, sufficient uncontroverted facts have been established by the parties to permit determination of the legal questions presented.

#### B. *The APA*

◼ The Administrator's decision in this case is subject to judicial review in accordance with the APA, 5 U.S.C. § 706, and, therefore, the decision cannot stand if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–14, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971). The scope of judicial review is narrow, and the court should

---

**10.** All references to the C.F.R. are based on the 1984 edition of the C.F.R.

**11.** Section 203(m) provides in relevant part:

[The] "[w]age" paid to an employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such ... facilities are customarily furnished by such employer ... *Provided further*, [t]hat the Secretary is authorized to de-

termine the fair value of ... [the] facilities. ...

Section 203(m) vests the Administrator of the Labor Department and the Secretary of Labor with authority to determine the reasonable cost and the fair value, respectively, of facilities provided by the employer. The Secretary of Labor has delegated his authority to the Administrator, 29 C.F.R. § 531.1(g), and the Administrator has promulgated Regulations pertaining to Section 203(m) accordingly. *See* 29 C.F.R. §§ 531, 516.

not substitute its judgment for that of the agency. *Id.* at 416, 91 S.Ct. at 823; *Connecticut v. E.P.A.,* 696 F.2d 147, 155 (2d Cir.1982).

■ Under the arbitrary and capricious standard, however, the reviewing court should set aside an administrative decision if the agency "failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). There must be " 'a rational connection between the facts found and the choice made.' " *Id.* (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). The reviewing court must " 'consider whether the [administrative] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight System,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).

■ The APA also requires that the reviewing court determine whether the administrative decision is in accordance with the law. The court must ascertain the correct meaning of the relevant statute and give effect to the statute's underlying purpose. *See Donovan v. Red Star Marine Serv., Inc.,* 739 F.2d 774, 776 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1355, 84 L.Ed.2d 377 (1985). Although an administrative decision must be given due deference, the decision "cannot stand if it is inconsistent with the intent of Congress, or would defeat the purpose" of the relevant statute. *New York v. Schweiker,* 557 F.Supp. 354, 360 (S.D.N.Y.1983); *accord Montres Rolex, S.A. v. Snyder,* 718 F.2d 524, 533 (2d Cir.1983), *cert. denied sub nom. Grand Jewels, Inc. v. Montres Rolex, S.A.,* —— U.S. ——, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984) (Deference "is unwarranted when the administering agency's in-

terpretation would cripple a statutory scheme in its inception."). Reviewing courts must not rubber stamp administrative decisions that frustrate the congressional policy underlying the pertinent legislation. *See Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Rel. Auth.,* 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).

With this standard of review in mind, the Court concludes that the Administrator's decision—holding that the defendants may include rent as part of the plaintiffs' wages under the FLSA—must be set aside under the arbitrary and capricious standard and because the decision is not in accordance with the law.

## II. THE FLSA

Congress enacted the FLSA to prevent inadequate wages and excessive hours, and to provide a standard of living that would promote the health and well being of workers covered by its provisions. *See* 29 U.S.C. § 202(a) (1982); *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1944). The humanitarian purpose of this legislation remains as valid a social goal today as it was in 1938. *See Donovan v. I and J, Inc.,* 567 F.Supp. 93, 98 (D.N.M.1983).

Although the FLSA permits employers to include certain cash substitutes as part of an employee's minimum wage, Congress was concerned that employers might overcharge their employees for facilities provided. *See Davis Bros.,* 522 F.Supp. at 631. In order to prevent employers from avoiding the obligations imposed by the minimum wage provisions of the FLSA, certain safeguards and limitations were set forth in the Regulations, restricting the payment of wages in any form other than cash or its equivalent.[12] *See* 29 C.F.R. § 531.28. The convenience-of-the-employer doctrine was

---

**12.** "It appears to have been the clear intention of Congress to protect the basic minimum wage

... from profiteering or manipulation by the employer...." 29 C.F.R. § 531.28.

one of the safeguards set forth to protect covered employees. *See* 29 C.F.R. §§ 531.-3(d)(1), 531.28.

■ The provisions of the FLSA should be construed broadly; they should not be applied "in a narrow, grudging manner." *Tennessee Coal Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944); *accord Tony and Susan Alamo Foundation v. Secretary of Labor,* — U.S. ——, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985) (The FLSA should be liberally construed "to apply to the furthest reaches consistent with congressional direction." (quoting *Mitchell v. Lublin McGaughy & Assoc., Inc.,* 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959)). In keeping with this approach, the FLSA Regulations—and, specifically, the provision which establishes the convenience-of-the-employer doctrine—should be liberally construed in order to prevent employers from making excessive inroads on an employee's basic cash wage. In the case at bar, the Administrator's decision fails to give proper effect to the FLSA's underlying purpose.[13]

### A. The Balancing Test

■ The plain language of the pertinent Regulation—29 C.F.R. § 531.3(d)(1)—mandates that a balancing test be applied to determine whether housing costs may be considered as part of the wages paid under the FLSA. The benefit to the employer must be weighed against the benefit to the employee, in order to determine which party received the primary benefit from the facilities provided. *See Laffey v. Northwest Airlines,* 642 F.2d 578, 588 (D.C.Cir. 1980); *Donovan v. KFC Services, Inc.,* 547

F.Supp. 503, 508 (E.D.N.Y.1982); *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294, 304 (N.D.N.Y.1978). In the case at bar, the Administrator failed to apply the requisite balancing test.

The Administrator held that the housing in the labor camps was not provided primarily for the employer's benefit or convenience, and that rent could be included as part of the plaintiffs' minimum wage. Without articulating the reasons for his conclusion, the Administrator simply stated: "I concur with the ALJ that there is substantial evidence in the record to support his finding that the lodging was (and is) furnished primarily for the benefit of the migrant farm workers." Administrator's Decision ("Adm.Dec.") at 11. The ALJ noted only two "clear[ly] identifiable benefits to the employee": (1) "[t]he benefit of apparent worker comradeship and [(2)] nearness to the work place which thereby eliminates daily transportation costs . . . ." ALJ's Recommended Decision ("Rec.Dec.") at 9. The fact that the plaintiffs did not have to obtain their own lodging implicitly constituted a third benefit. A careful reading of the Administrator's decision [14] reveals that the Administrator failed to balance these benefits against the benefits accruing to the growers.

■ The FLSA does not authorize employers to include housing costs as part of an employee's minimum wage merely because the employee is convenienced by the facilities provided. The facilities "must also primarily serve the interest of the employee." *Laffey v. Northwest Airlines,*

---

**13.** The government argues that "[s]ince housing . . . is a basic necessity for human existence, it should be regarded as being for the primary benefit of the employee except in special circumstances. . . ." Reply Memo. on Behalf of Federal Defendants, at 48. Although this interpretation of the convenience-of-the-employer doctrine may be consistent with the Administrator's decision, it is not consistent with the policy underlying the FLSA. Indeed, adopting such a restrictive interpretation would essentially create a presumption in favor of employers and against employees, and would undermine the

congressional purpose of protecting the wages of covered workers.

**14.** The Administrator adopted certain findings and conclusions made by the ALJ. *See* Adm. Dec. at 17. The Court has therefore carefully reviewed and considered not only the Administrator's decision, but also the ALJ's recommended decision where appropriate. Accordingly, any reference made to the Administrator's decision also includes those findings and conclusions of the ALJ which were adopted by the Administrator.

642 F.2d at 587–88.[15] That *some* benefit accrued to the workers is not enough. Rather, the issue—which the Administrator did not address—is whether the *primary* benefit accrued to the workers. *See Commissioner v. Kowalsky,* 434 U.S. 77, 88 n. 21, 98 S.Ct. 315, 322 n. 21, 54 L.Ed.2d 252 (1977);[16] *Donovan v. KFC Services,* 547 F.Supp. at 508; *Adams v. United States,* 585 F.2d 1060, 1065, 218 Ct.Cl. 322 (1978).

In *Donovan v. KFC Services,* 547 F.Supp. at 508, the court held that certain uniforms supplied to kitchen workers were provided primarily for the employer's convenience and therefore the cost of supplying the uniforms could not be considered as part of the employees' compensable wage under the FLSA. The court recognized that the employees received some benefit from the uniforms, since the employees were relieved of the obligation and expense of securing and cleaning their own uniforms. Nevertheless, the court concluded that the employer rather than the employees received the primary benefit. Similarly, in *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. at 304, the court found that a demonstrator car, supplied to a car salesman by the employer, was furnished primarily for the employer's benefit. Although the car was used by the employee for personal driving, the court found that the car was a valuable and necessary tool in the employer's business, and that the employer's business profited from having the employee drive a demonstrator car. The court concluded that the benefit to the employer's business predominated over the personal benefit to the employees. *See also Brennan v. Modern Chevrolet Co.,* 363 F.Supp. 327, 333 (N.D.Tex.1973), *aff'd mem.,* 491 F.2d 1271 (5th Cir.1974) (Although ninety percent of the mileage driven on the demonstrator car was for personal use, the court held that the car was

furnished primarily for the benefit of the employer.).

In the case at bar, the on-site housing arrangements undoubtedly satisfied certain personal wants and needs of the migrant farmworkers. Nevertheless, the record shows that the housing was furnished primarily to benefit the growers' businesses, and the personal benefit accruing to the employees was secondary and incidental to the growers' business interests. This conclusion is based on the factors set forth below.

## B. *Benefit to the Growers*

The ALJ found that the on-site housing was not furnished primarily for the benefit of the growers because "the mere presence of the workers on the farm without more [was] not enough to identify the lodging as primarily for the benefit of the employer, especially [since] reporting for work was optional." Rec.Dec. at 9. In reaching this conclusion, the ALJ clearly failed to consider the key issue here, which is the significant benefit that the growers derived from the employees "mere presence" on the farm. As discussed below, providing on-site lodging for the migrant workers (1) enabled the growers to secure an adequate workforce, (2) promoted efficiency, and (3) made it possible for the workers to harvest the crops for the growers. The need for on-site housing arises out of the nature of the job, and providing such housing has customarily been treated as an integral part of operating a farm.

### 1. *An Adequate Workforce*

If the growers did not provide housing, many of the migrant farmworkers would not work for the defendants. This point— which is not disputed[17]—is of critical importance. The record shows that the local

---

**15.** In *Laffey,* the court noted that as a general rule, the cost of providing accommodations will not constitute wages under the FLSA. 642 F.2d at 587 (dictum).

**16.** The convenience-to-the-employer doctrine appears to have originated under tax law. *See Commissioner v. Kowalski,* 434 U.S. at 84, 98

S.Ct. at 319; *see also* 26 U.S.C. § 119(a) (1982). Tax cases are cited herein because they set forth factors to be considered in evaluating whether facilities are furnished primarily for the benefit of the employer.

**17.** See *supra* note 7.

workforce is insufficient to meet the defendants' need for labor.

A substantial number of the defendants' employees are migrant workers. The record shows that migrant workers constitute 30% to 100% of the workers employed on the various farms owned by the defendants. The growers must harvest their crops within a very limited period of time—generally within a month or less—and therefore must have workers available when the crops are ready to be harvested. If migrant workers were unavailable because housing was not provided, the defendants would not be able to harvest their crops in the ordinary manner.

In *Wilhelm v. United States,* 257 F.Supp. 16, 21 (D.Wyo.1966), the court found that food and lodging provided by a ranch owner were primarily for the convenience of the ranch owner/employer, despite the benefits accruing to the employees. The court concluded that the facilities were furnished primarily for the employer's benefit because there were no other facilities available in the area, and the employees were needed to operate the ranch. *See also Setal v. Commissioner,* 20 T.C.M. 780, 782 (1961); *Olkjer v. Commissioner,* 32 T.C. 464, 468–69 (1959).

In the instant case, the growers had to provide housing in order to have the plaintiffs on the job at all.[18] Thus, the defendants' businesses depended upon the labor camps. Absent the on-site housing, the growers' businesses would have suffered.

### 2. *Increased Efficiency*

The defendants also benefit from having the workers actually living on the farms because it increases the efficiency of the farm operations. Since the crops must be harvested within a limited period of time, the workers are required to be available to work long hours on a flexible schedule. Having the workers live on the premises facilitates this process. The plaintiffs often work twelve hours a day, and they may work six or seven days a week. Lunch is eaten on-site, in the housing provided by the growers. If it rains, the workers usually wait in the labor camps until the employer signals that the weather has cleared enough for the workers to go into the fields. Thus, it is convenient for the defendants to have the workers at hand.

### 3. *Nature of the Job*

The plaintiffs' need for housing arises as a result of the nature of the employment.[19] Because the work is seasonal and transitory, the workers do not maintain full time residences near the farms. Ordinarily, the workers arrive just before the harvest begins and therefore have little or no time to look for and obtain lodging. In addition, the record indicates that many of the plaintiffs do not speak English well and have little education, so that it would be particularly difficult for them to secure off-site housing given the existing time constraints.

Moreover, as previously noted, both sides agree that the plaintiffs could not afford off-site housing. This conclusion is supported by the record, which shows that the plaintiffs generally have a low yearly income, often barely above the national poverty level. It would also be difficult, as the Administrator pointed out, for the plaintiffs to afford daily transportation costs from off-site housing to the farms.

The ALJ noted that none of the plaintiffs elected to secure off-site housing even after the growers began deducting

---

18. The government retained a real estate appraiser in connection with this action, at the direction of the ALJ. In his report, the appraiser stated that the housing in the labor camps served "a special purpose necessary to the overall operation of the defendants' farms."

19. The nature of the employment is one factor to be considered under the convenience-of-the-employer doctrine. *See* 29 C.F.R. § 531.32 (Uniforms were found to be primarily for the employer's convenience "where the nature of the business require[d] an employee to wear a uniform."). Another factor to be considered is whether the particular item or service provided by an employer "is an incident of and necessary to the employment." *See* 29 C.F.R. § 531.32. In the instant case, the record indicates that the on-site housing is an incident of the employment because of the nature of the work.

rent from the plaintiffs' cash wages.[20] Given the existing circumstances and the nature of the job, however, it is not surprising that the workers did not obtain off-site housing.[21]

### 4. Accomplishing the Job

Like farm equipment or tools, the housing in question was provided to enable the workers to carry out a job for the growers. The Regulations promulgated under the FLSA concerning the convenience-of-the-employer doctrine set forth several examples of "facilities" that have been found to be primarily for the employer's convenience. *See* 29 C.F.R. § 531(d)(2). Essentially, all of the facilities listed are things that are ordinarily provided so that a worker can accomplish a designated job for the employer. The examples, which are intended to be illustrative rather than exclusive, include: "(i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; [and] (iii) the cost of uniforms...." *Id.; see also* 29 C.F.R. § 531.32.

Although an employee may receive certain benefits from the facilities listed above, the facilities primarily benefit the employer. Where tools are furnished, for example, the employee benefits by not having to secure and maintain his own tools, and—depending on the type of work involved—the worker may avoid physical strain or injury by using the tools. Indeed, the tools might even make the job more enjoyable. However, despite any benefits accruing to the worker, the tools are provided so that the employee can accomplish a job for the employer. In the instant case, housing is provided so that the migrant workers can harvest the crops for the growers.

### 5. Practice in the Trade

The record indicates that providing housing for migrant workers has customarily been treated by the defendants and other growers as an integral part of operating and maintaining a farm or orchard.[22] Before the minimum wage provisions of the FLSA were extended in 1978 to include agricultural workers, the defendants charged no rent for the housing provided in the labor camps. The housing was generally considered part of basic overhead costs.

The record shows that most of the apple farmers in the defendants' area still charge no rent for the facilities they provide for migrant workers. Moreover, according to testimony given at the hearing, migrant workers pay no rent for housing provided by employers in a number of other states,

**20.** Although the ALJ stated that housing was available in the general area for at least many of the workers, the record indicates that very little off-site housing suited to the plaintiffs' needs was available. A report by the Orange County Planning Department was submitted in evidence, which showed that there was only a 4% vacancy rate in rental properties in the relevant area in 1979. The testimony indicated that 4% was a low vacancy rate. The record also shows that the plaintiffs need furnished housing since they do not bring furniture with them for the short period of time that they work for the growers. This requirement effectively limits the choice of housing even further.

**21.** It would be inappropriate to conclude that housing was furnished primarily for an employee's benefit merely because the employee occupied the facilities provided, rather than seeking alternative housing. Such a conclusion would effectively eliminate the protection offered to employees by the FLSA Regulations.

The convenience-of-the-employer doctrine does not mandate that an employee seek alternative housing in order to avoid deductions made from his wages, and the doctrine should not be unreasonably construed. *See United States Junior Chamber of Commerce v. United States*, 334 F.2d 660, 664, 167 Ct.Cl. 392 (1964) ("Even ... where the employment was at a construction jobsite 40 miles from Anchorage ... it would presumably be possible for the employer to require the employees to furnish their own housetrailers to live near the jobsite. We believe [however, that the convenience-of-the-employer doctrine] should be given a reasonable interpretation.").

**22.** Past practices present another factor to be considered. *Cf. Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1136 (5th Cir.1984) (The court looked at past practices to determine whether certain work was primarily performed for the benefit of the employer.).

including Delaware, Maryland, Virginia, Pennsylvania, and New Jersey.[23] Indeed, it appears to be a common practice in the industry to provide rent-free housing for migrant farm laborers. This practice is another factor which supports the conclusion that the defendants set up labor camps in order to ensure that their farms would run properly.

## C. *Benefit to the Workers*

The Administrator found, and the record shows, that the plaintiffs received some benefit from the housing provided. A brief review of the benefit accruing to the plaintiffs is in order here, since the plaintiffs' benefits must be measured against the growers' benefits, pursuant to the FLSA Regulations.

The record indicates three identifiable benefits accruing to the plaintiffs. The most significant benefit was that the plaintiffs did not have to secure or maintain their own lodging while they were working on the growers' farms. The ALJ identified two other benefits—the benefit of worker comradeship in the labor camps, and the benefit of avoiding daily transportation costs.

In evaluating the benefit that the plaintiffs received from the facilities provided, the quality of the housing should also be taken into consideration. The record shows that the housing in the migrant camps is generally of substandard quality.[24] Many of the buildings are structurally unsound; some have wooden floors or steps that are rotted. Many buildings present fire hazards since they are highly flammable and have no smoke detectors. The existing conditions are generally unsanitary: there are uncovered garbage cans, windows without screens, flies, roaches, leaking pipes, and clogged drains.

Many of the facilities have no indoor toilets and some have no indoor plumbing at all. The facilities are often surrounded by fields which are sprayed with pesticides, and dust is often a problem as well. The defendants' farms are all located several miles from the closest towns; because the workers generally have no cars and there is no public transportation available, the workers often do not have access to a telephone, laundromat, shopping area, or recreational facilities.

## D. *Evaluation*

Both the farmworkers and the growers received certain benefits from the facilities provided. When the correct balancing test is applied and all of the relevant factors are considered, however, it is evident that the housing in the labor camps was provided primarily for the benefit of the growers. Consequently, the cost of the housing may not be considered as part of the plaintiffs' minimum wage under the convenience-of-the-employer doctrine. *See* 29 C.F.R. § 531.3(d)(1).

The Administrator's decision lacks "a rational connection between the facts found and the choice made,"[25] and therefore must be set aside under the arbitrary and capricious standard. Furthermore, because the Administrator failed to correctly apply the balancing test mandated by the FLSA Regulations, the Administrator's decision is not in accordance with the law.

## III. ESTOPPEL

The defendants claim that the plaintiffs are estopped from recovering the wage deductions made by the defendants during 1978 and 1979, and therefore request that summary judgment be granted in their favor with respect to the deductions made in 1978 and 1979. The defendants argue that

---

**23.** The Administrator made note of the ALJ's finding that the facilities provided by the defendants "are similar in nature to lodgings furnished to farm worker employees by a variety of farming interests throughout the U.S." Adm. Dec. at 8.

**24.** The poor condition of the housing is another indication that the facilities were provided to serve the business interests of the growers rather than to serve the personal interests of the farmworkers.

**25.** *Burlington Truck Lines v. United States,* 371 U.S. at 168, 83 S.Ct. at 245.

the 1978–1979 deductions were approved by the Bronx office of the Labor Department's Wage and Hour Division, or—alternatively—that the deductions were approved by the Labor Department's Employment and Training Division. Since there is no genuine issue of fact raised by the defendants' estoppel arguments, and since these arguments are insufficient as a matter of law, they are rejected.

## A. *Statutory Estoppel*

Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259 (1982) ("Section 10"), offers a limited defense to employers who rely on a government agency's interpretation of the law. With respect to violations of the FLSA, this defense will succeed only if the defendant shows that it relied on an opinion in writing from the Administrator.

■ Section 10 provides, in relevant part, that "no employer shall be subject to any liability ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation" made by the specified agency. Section 10 also provides that in cases concerning the FLSA, the specified "agency" is the Administrator of the Wage and Hour Division of the Labor Department. Thus, in order to satisfy Section 10, any statement relied on must have been issued by the Administrator, and that statement must be in writing. A statement by a lesser official or employee will not suffice. *See* 29 C.F.R. § 790.13; *National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 700 (D.C.Cir.1971).

■ In the instant case, the Administrator did not issue a written statement evaluating the wage deductions made by the defendants until 1983, when he rendered the decision currently being reviewed by this Court. In his 1983 decision, the Administrator rejected the defendants' argument concerning statutory estoppel.

The defendants argue that in making the 1978–1979 wage deductions, they relied on the actions and representatives of the Bronx office of the Wage and Hour Division. The record shows that during 1978 and 1979, the Bronx office told the growers that a rental charge of $12.50 was "very reasonable." In addition, the Bronx office took the position that—until a final determination was made by the Administrator—the growers would not be charged with violating the FLSA unless they deducted more than $12.50 a week. The growers assert that, in light of the position taken by the Bronx office, estoppel is appropriate under Section 10.

Because the representations allegedly relied on were oral and were not made by the Administrator, they do not provide a basis for an estoppel defense under Section 10. *See E.E.O.C. v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir.1982); *Usery v. Godwin Hardware, Inc.*, 426 F.Supp. 1243, 1268 (W.D.Mich.1976). The Bronx office was not authorized under Section 10 to make a final determination of whether the 1978–1979 deductions violated the minimum wage provisions of the FLSA. That determination could be made only by the Administrator, and the Bronx office advised the growers of that fact. Moreover, the Bronx office never issued a *written* statement approving such deductions. Section 10 specifically states that reliance must be based on a written statement.

The growers have also failed to show that they relied on the Bronx office in good faith. The test for good faith is an objective one—whether the defendant acted as a reasonably prudent man would have acted under similar circumstances. *See* 29 C.F.R. § 790.15. " 'Good faith' requires that the employer have ... no knowledge of circumstances which ought to put him upon inquiry." *Id.*

In the instant case, the record shows that the defendants had notice that a hearing was pending and that a final determination had to be made by the Administrator. Thus, the defendants could not have reasonably relied on the Bronx office.

In an effort to by-pass the lack of a written statement by the Administrator,

the defendants assert that they relied on various written statements made by the Labor Department's Employment and Training Division ("ETA"). The ETA is a national employment service established pursuant to the Wagner-Peyser Act, 29 U.S.C. §§ 49–49K (1982).

This argument cannot succeed. The ETA is not empowered to approve or disapprove wage deductions under the FLSA. As previously discussed, rulings on wage deductions can be made only by the Administrator.

Moreover, the defendants cannot argue that they believed—in good faith—that ETA approval of their requests for workers constituted approval of the wage deductions. The ETA acts as a national labor exchange. *See* 20 C.F.R. § 652.2. Employers submit job orders which contain certain information about the job being offered, such as the type of work available, and the wage that will be paid. It was not intended that the ETA regulate all disputes involving migrant workers and the employers who make use of the ETA's services. *See 29 Puerto Rican Migrant Farm Workers v. Shade Tobacco Growers Agric. Ass'n,* 352 F.Supp. 986, 993 (D.Conn.), *aff'd,* 486 F.2d 1052 (2d Cir.1973). The record indicates that the ETA was not in a position to verify or evaluate the information contained in the job orders submitted by the growers. Approval of the job orders did not constitute approval of the information contained in those orders, and the ETA never represented that it did.

### B. *Equitable Estoppel*

The defendants also assert the defense of equitable estoppel, again claiming reliance on the conduct and representations of the Bronx office and the ETA. This argument fails for essentially the same reasons the statutory estoppel defense failed.

The defense of equitable estoppel can succeed only if the party asserting the defense had no knowledge of the true facts, and reasonably relied on another's conduct to his detriment. *See Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *Sweeten v. United States Dep't of Agriculture,* 684 F.2d 679, 682 n. 5 (10th Cir.1982); *Russell Corp. v. United States,* 537 F.2d 474, 484, 210 Ct.Cl. 596 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1979). In addition, where—as here—the defense of estoppel is based on a party's reliance on government conduct, it must be shown that there was serious misconduct on the part of the government or its agents. *See Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981); *Sweeten v. Dep't of Agriculture,* 684 F.2d at 682; *Corniel-Rodriquez v. I.N.S.,* 532 F.2d 301, 307 (2d Cir.1976).

The defendants have failed to show that there was any misconduct whatsoever on the part of the government. Moreover, in light of the information known by the growers, they had no legitimate reason to believe that the 1978–1979 wage deductions had been approved by either the Bronx office or the ETA.

The Bronx office repeatedly advised the growers that the Bronx office personnel did not have the authority or ability to make a final determination of whether the 1978–1979 rent deductions violated the FLSA minimum wage provisions. In January 1978, at a meeting held to discuss the minimum wage provisions, a Bronx area compliance officer advised the growers that the final determination concerning wage deductions had to be made by the Administrator. The record shows that various other compliance officers repeated that same information to the defendants throughout 1978 and 1979. In June 1979, the Bronx office sent a letter to each of the defendants, requesting information concerning the cost of supplying housing in the labor camps and stating that the "Administrator must make a final determination as to the applicability of the [wage]

deduction." As previously discussed, the growers also had no reasonable basis for believing that the action taken by the ETA constituted approval of the rent deductions. Thus, neither the argument concerning statutory estoppel nor the argument concerning equitable estoppel has merit.

### Conclusion.

The defendants' motion for summary judgment based on the defense of estoppel is denied, as is the government's request that the Administrator's decision be affirmed in all respects. The Administrator's decision is set aside in relevant part, and the plaintiff's motion for summary judgment is granted.

The record indicates that although the plaintiffs received some benefit from the housing provided, the labor camps were set up primarily for the growers' benefit since the housing was needed to ensure an adequate workforce to operate the farms. Thus, under the convenience-of-the-employer doctrine, the growers violated the minimum wage provisions of the FLSA by deducting housing costs from the cash wages paid to the plaintiffs. The Administrator's decision to the contrary was arbitrary and capricious, and was not in accordance with the law.

Because the growers violated the FLSA minimum wage provisions, the plaintiffs are entitled to reasonable attorneys' fees, and costs, pursuant to 29 U.S.C. § 216(b).[26]

Counsel for the parties are hereby ordered to compute the amount due to the plaintiffs as a result of the defendants' violation of the FLSA, and are directed to submit judgment within thirty days. Attorneys' fees and costs are to be determined separately.

So ordered.

26. Section 216(b) provides in pertinent part:

Any employer who violates the provisions of section 206 ... of this title shall be liable to the ... employees affected in the amount of their unpaid minimum wages and in an additional equal amount as liquidated damages.... The court ... shall, in addition to any judgment awarded to the ... plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.