**Philip A. BROWNING, Jr., Plaintiff,**

v.

**Herbert H. PEYTON, Jr., Individually and d/b/a Gate Lands Company, and Gate Petroleum Company, a Florida corporation, Defendants.**

**No. M8–85.**

United States District Court,
S.D. New York.

Dec. 6, 1988.

The Garland Firm, Atlanta, Ga. by Edward T.M. Garland, Robin N. Loeb, and Local Counsel, Beldock Levine & Hoffman, New York City, for plaintiff.

Stecher Jaglom & Prutzman, New York City by L. Donald Prutzman, Jr., for non-party witness.

## MEMORANDUM

MILTON POLLACK, Senior District Judge.

On September 2, 1988, in connection with a protective order sought by non-party witness Morgan Stanley & Co. Incorporated, ("Morgan Stanley") pursuant to Fed.R. Civ.P. 37(a)(4) this Court ordered the plaintiff Browning to reimburse the expenses, including reasonable attorney's fees, of the non-party witness. Browning sought the depositions for use in a Florida lawsuit which he had filed against defendant Peyton. Browning subpoenaed Morgan Stanley to produce several of its employees to be deposed in New York, including one who then was in London on business. Browning moved to enforce the subpoenas and Morgan Stanley cross-moved for a protective order and sought to recover expenses and attorney's fees in connection with the cross-motion.

The Court set a hearing in aid of the motion for a protective order, and directed that the witnesses appear and submit to examination so that the Court could resolve the claims and denials concerning Browning's charge of evasion on the one hand and Morgan Stanley's charge of oppressive and frivolous procedure on the other.

At the examinations it soon became apparent to the Court that there was little or no legitimate purpose for the depositions, as claimed by the non-party witness, and that Browning was seeking to go into matter that was well beyond any legitimate purpose in his litigation. The Court found that the examinations were a "gross abuse" of the discovery process and were "unnecessary and improper," and that the

Browning's conduct warranted imposition of sanctions. Morgan Stanley was instructed to submit proof by affidavit of the claimed expenses and attorney's fees and Browning was directed to respond with answering affidavits. The parties waived a hearing, and the matter was taken on submission.

Counsel for Morgan Stanley has submitted requests totalling $25,658.74 for expenses and attorney's fees. Browning objects to this request both as to category and amount. The background of the Florida lawsuit and the issue posed by the New York proceedings will properly focus attention on the merits of this application.

*Background*

Browning filed suit against defendant Peyton in the Middle District of Florida, alleging a breach of an oral joint venture partnership entered into for the purpose of submitting a bid for the acquisition of certain real estate owned by Phillips Petroleum Company. Peyton apparently had bid for the property on his own. In Browning's language, Peyton "walked away from the alleged joint venture to bid upon, acquire, operate and dispose of the real estate on his own." Morgan Stanley had acted as a broker in the transaction.

Ostensibly, Browning sought to establish from Morgan Stanley employees when they were first approached by Peyton for the sale to him of the real estate, and when and from whom they first obtained information concerning the sale. It had developed that the information sought was largely—if not exclusively—documentary, and little was to be added orally.

Browning made a demand on Morgan Stanley for its entire documentary file. Morgan Stanley produced its files on the sale, constituting over 4500 pages of documentary data, which were largely irrelevant to whether Browning originated the idea of an asset sale and whether he entered into an oral agreement with Peyton for a share of the property to be acquired from Phillips Petroleum. Browning did not restrict himself to the issues in his litigation but also asked for production of every document relating to a sale to another buyer of real estate assets not involved in the

sale in which he claimed to be involved. Nonetheless, he demanded depositions of every Morgan Stanley employee who had any exposure to any aspect of the real estate transaction, regardless of whether they had any relation to the introduction of the matter to them or Morgan Stanley or were even exposed to Peyton in any way.

Internal inquiry indicated that one Simon P. Orme, based at that time in London, might know when and how the first contact with Peyton had occurred and also that he had the most day-to-day responsibility for the substantive transaction. Counsel for Browning was so informed. Inquiry also elicited that the others whose depositions were demanded had no involvement in the transaction at all and none with Peyton; Browning's counsel again was so informed.

Browning rejected Morgan Stanley's offer to arrange for a deposition of Mr. Orme during a business trip to the United States in May, 1988, and demanded Orme's immediate presence. In addition, Browning's counsel was given the opportunity to interview Mr. Grinch, another one of the five employees, when counsel came to New York to review the documentary production. The plaintiff's counsel was also offered the opportunity of a telephone interview with a third of the five, Mr. Sharpstone, to confirm his lack of knowledge but the lawyer refused to interview him on the telephone. Counsel continued to insist on taking the multiple depositions, and it became apparent that although Morgan Stanley has no interest at stake in the litigation and that neither party is a present or former client of Morgan Stanley, the company was being used as a pawn for the private dispute between Browning and Peyton.

The hearing ordered in connection with the application for a protective order was very informative. After listening to the questioning of three of the employees for two hours the Court terminated the examinations, finding:

> The examinations have been a gross abuse and unnecessary and improper.... The examination has been unreasonably directed to matters and conduct personal to the affairs of the plaintiff and defendant with which the witnesses who were called here had no exposure or informa-

tion, and the Court is satisfied that the examining counsel knew that in advance of the depositions.

The Court thereupon instructed Morgan Stanley's counsel to furnish proof of its expenses and counsel fees.

*Compensation*

■ The "meter" approach (recording time) of computing compensation has created a tendency in applications of this sort to go so far as to obscure the objective value of the particular services to be evaluated in monetary terms. The meter method tends to disregard the fact that a fee for legal services must also bear a proper relationship to the value of the engagement to the client, the amount involved and the importance of the services required. The requirement that time records be kept by counsel seeking compensation through the courts was initiated as a check against runaway charges on the upside and to put in bold relief the actual time required and spent on a legal task. In short, time records were required to highlight unrestrained fee demands. However, the requirement of time records was not an invitation for the distortion of the value of the required services or the proliferation of unnecessary unwarranted activity in the light of the overall objective requirements of the case.

■ It is possible to spend an enormous amount of time on relatively and objectively trivial and inconsequential matter either through a failure to appreciate the overall place in the total engagement of a particular segment, or through lack of basic fundamental knowledge of the subject matter, or some other reason. Consequently, before the meter is allowed to sweep the costs out of proportion to the subject matter it is incumbent on counsel to discriminately select his activities consistent with the requirements of an engagement, but with a realistic awareness that a case may not be worth what the meter will tally up to if left to run without restraint.

■ Turning to this particular case, counsel was retained on a very discrete matter: resistance by a non-party witness to a discovery demand in a local forum in a case pending in another jurisdiction. Demand was made for the testimony of the non-party witness to be given by its employees. Practical efforts to reach a sensible accommodation with the examiner failed and it was necessary to go to court for a protective order—hardly an unusual or difficult or necessarily time-consuming task, or one requiring more than shallow legal research. In short, it was hardly a situation of significant importance (other than irritation) to a client.

Morgan Stanley's counsel ascertained the facts from the client's in-house counsel; prepared routine papers; made two court appearances which included preparation of the deponents; conducted some routine telephoning and correspondence; and made a series of unsuccessful attempts to obtain reasonable concessions from his adversary. Necessary supporting personnel to assist counsel and to file and deliver papers were utilized. The rest of the services relate to the preparation of the bill (in this case the application for an allowance of fees and expenses).

Counsel for Morgan Stanley has presented a request for an allowance of $25,658.74. As could be expected, Browning has entered a vigorous objection. The opposition asserts that the services occasioned by his conduct were largely unnecessary; that the services were stretched out beyond any ordinary requirement therefor and should have been billed at lower rates for those whose services are detailed; that paralegals, summer extras, and delivery employees have been improperly billed at inflated rates for their supporting services; that the services for preparing the bill are not reimbursable; and finally that any allowance herein should take account of the fact that the court required three of the employees to appear for examination.

■ The keys to a fair allowance are based, among other things, on the nature of the matter committed to the attorney, its novelty, the difficulties encountered and the difficulty of the task assumed; and of course the results achieved.

The Court finds and concludes that:

■ (1) Services reasonably required to prepare a motion for an award of fees and expenses reasonably incurred may properly

be claimed as a compensable service under Fed.R.Civ.P. 37(a)(4);

■ (2) At least part of the services rendered in this case by in-house counsel may be included in the claim, *see Revlon. Inc. v. Carson Products Co.,* 622 F.Supp. 362, 365 (S.D.N.Y.1985) (Cooper, J.);

■ (3) The reasonable value of work reasonably allocated to a paralegal employee may properly be claimed as an expense at a modest hourly rate, *see, e.g., Pickman v. Dole,* 671 F.Supp. 982, 989–90 (S.D.N.Y. 1987) (Ward, J.) (awarding paralegal fees of $25/hour);[1]

■ (4) Different rates of compensation are awarded dependent on the litigation task performed, and not strictly according to the position of the person performing it. *See City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 471 (2d Cir.1974) (Moore, J.); *Fiacco v. City of Rensselaer, N.Y.,* 663 F.Supp. 743, 746 (N.D.N.Y.1987) (reducing the rate for an attorney who performed "routinely clerical" tasks from $75/hour to $20/hour). Thus, for example, all delivery work may only be valued at delivery service rates, whether performed by summer associates, paralegals, or messengers;

(5) The fees in this case to be awarded are not to be apportioned to reflect the fact that three of the requested depositions actually took place on a trial basis as an extension of the motion for a protective order to establish pragmatically what was being claimed and disputed about the need for depositions. In fact, it was only by these depositions that the claim of Browning's abuse of discovery was confirmed, thus resulting in the award of fees and expenses to Morgan Stanley; and

(6) Most importantly, as another court within the Second Circuit has said:

Time, to be compensable, must be reasonable and necessarily spent. Proof that time was in fact spent does not foreclose inquiry into the elements of reasonableness or necessity. To that inquiry the trial judge brings an independent mind, informed by his knowledge of the case and his past experience.

*Mid–Hudson Legal Services v. G & U, Inc.,* 465 F.Supp. 261, 270–71 (S.D.N.Y. 1978) (Haight, J.).

Judge Weinfeld expressed the pertinent principles in revising time records downwards so as to arrive at compensable time as follows:

This Court's experience, both at the bench and bar over extended years, qualifies it to estimate the time reasonably required by plaintiffs' claims in terms of research, analysis and drafting of various documents. Moreover, the Court's own research, study and analysis of the respective contentions of the parties further afford some yardstick by which to measure plaintiffs' attorney's allegations of the time factor. Any expenditure of time beyond that which is reasonably required suggests either inexperience and devotion of more time than warranted to fairly and properly present claims or, alternatively, that the attorneys, however experienced, engaged in dilettantism; a losing side is not required to pay for such indulgences.

*Boe v. Colello,* 447 F.Supp. 607, 610 (S.D.N. Y.1978).

■ As a rule of fairness, when counsel fees are to be charged to the opposing party, services should be charged at the rate of the available person who can most cheaply qualify to complete the task: cost-conscious clients would expect such practices.

---

1. Browning contends that under the Second Circuit's decision in *City of Detroit v. Grinnell Corporation,* 495 F.2d 448 (2d Cir.1974), reimbursement for the use of paralegals must be limited to the cost of their wages, since "their time cannot be considered as input in the fee award." *Id.* at 473.

Browning misreads the effect of the *Grinnell* decision. That particular passage in *Grinnell* has been interpreted to mean only that paralegal time should be listed as an "expense" (and therefore is not subject to enhancement for, e.g., the risk of nonpayment)—not that the paralegal time cannot be included on an hourly basis at all. *See, e.g., Zacharias v. Shell Oil Co.,* 627 F.Supp. 31, 34 n. 1 (E.D.N.Y.1984) (Platt, J.); *Desimone v. Industrial Bio–Test Labs, Inc.,* 83 F.R.D. 615, 621 (S.D.N.Y.1979) (MacMahon, J.). Here it makes no difference how the fee is characterized, since Morgan Stanley's counsel does not request any enhancement of the fee award.

Bearing these principles in mind, the Court has carefully scrutinized each entry of services and considered the person who rendered the services and a fair compensation for that person's services in light of the market valuations therefor. Clearly, there has been a departure from reality in the claim presented to an inordinate degree. Only one or two instances are needed as illustrations.

For example, Morgan Stanley's counsel claims $97.50 for the delivery for filing (by a summer associate at summer associate rates) on June 29th of its cross-motion papers with the Clerk of the Court and the delivery of a courtesy copy to the judge's Chambers.

Other illustrations involving excessive application of time to comparatively simple legal problems and resultant unwarranted large time charges, exist in the claim. Examples of one or two are indicative. The claimant requests approximately $3500 for the preparation of a cross-motion and answer to the motion to compel the testimony of the Morgan Stanley employees. Similarly, Morgan Stanley's counsel lists $2500 in fees for reviewing Browning's supporting papers, for preparation of a reply thereto, for undescribed research for the reply, for some correspondence to in-house counsel, and for an affidavit to satisfy local Civil Rule 3(f), which requires a statement that counsel have conferred unsuccessfully to reach agreement.

Only two items included in the $1967.24 of expenses claimed by the applicant need be singled out as illustrative of the excessiveness of the figure. Morgan Stanley's counsel lists $426.95 for in-house copying charges. That amount translates into 2,134 copies at the 20 cent charge which counsel makes per copy. There is no satisfactory evidence to confirm such a requirement for the motion and cross-motion involved. Listed also is $919.78 for LEXIS time charges utilized in researching the plain objection to the discovery demanded. No showing of need has been made for this item of expense or its extent.

Appraising each item, under all the facts and circumstances considered in detail, in accordance with the well settled and virtually elementary principles applicable, the Court is convinced that the fair and reasonable attorney's fees for necessary services, together with the reasonable and allowable necessary expenses, should be and are fixed at a total of $6567. That sum takes account amply of the fact that counsel was not representing an ordinary commercial client but rather that he appeared for a prestigious financial institution concerned about the misuse of the time of its employees and undoubtedly accustomed to substantial compensation for legal services. Any further compensation for counsel's services believed to be due is a matter between himself and his client but is not appropriately chargeable as sanctions to the plaintiff.

An order directing payment by the plaintiff accordingly should be submitted, on notice, before December 14th, 1988.