**Francisco SOLER, et al., Plaintiffs,**

v.

**G & U, INC., Charles Gratz, d/b/a Charles Gratz Farm, et al., Defendants.**

No. 78 Civ. 6252 (CHT).

United States District Court, S.D. New York.

July 15, 1992.

Farmworker Legal Services of New York, Inc., New Paltz, N.Y. (Dan Getman, Charlotte Sibley, of counsel), for plaintiffs.

Keane and Beane, P.C., White Plains, N.Y. (Edward F. Beane, Susan T. Travis, of counsel), for defendants.

## OPINION

TENNEY, District Judge.

Plaintiffs' counsel in this case, Farmworker Legal Services of New York ("Le-

gal Services") submits this application for attorney's fees and costs, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), in the amount of $374,149.74.[1] Defendants maintain that the fee award should be reduced for several reasons, each of which will be discussed in turn. For the reasons set forth below, Legal Services' request for attorney's fees is granted in the amount of $238,288.08.

## BACKGROUND

This matter is before the court after a fourteen year journey through the federal judicial system. The case began in 1978 with an action filed by approximately 100 migrant farm workers ("workers") under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (1988) ("FLSA"), against defendant farm owners ("owners"), who employed the plaintiffs during various growing seasons, and the United States Secretary of Labor. *See Soler v. G & U, Inc., et al.,* 615 F.Supp. 736 (S.D.N.Y.1985), *rev'd,* 833 F.2d 1104 (2d Cir.1987), *cert. denied,* 488 U.S. 832, 109 S.Ct. 88, 102 L.Ed.2d 64 (1988). The workers alleged that the owners had violated the minimum wage provisions of the FLSA by improperly deducting from the workers' wages the cost of on-site housing provided to them. *See Soler,* 615 F.Supp. at 738. According to the workers, the deductions were improper because the housing was primarily for the benefit and convenience of the owners, rather than that of the workers.[2] *See id.*

In June 1978, the workers petitioned the Wage and Hour Administrator of the Unit-

ed States Department of Labor ("Administrator") to determine the fair value of the housing. *See Soler v. G & U, Inc., et al.,* 477 F.Supp. 102 (S.D.N.Y.1979). The initial period of the litigation, from December 1978 to August 1986, involved both an administrative proceeding and the first application by the parties for judicial review. *See id.; Soler,* 615 F.Supp. 736. During this period, an Administrative Law Judge ("ALJ") conducted a twenty-nine day administrative hearing and found that the owners were entitled to deduct the cost of housing from the workers' wages because the housing primarily benefited the workers. *See Soler,* 615 F.Supp. at 739–40. In November 1983, the Administrator adopted most of the ALJ's findings, but adjusted the rental value of the housing. *Soler v. G & U, Inc., et al.,* 833 F.2d at 1106. Because the rental value determined by the Administrator was less than the amount that was deducted from the workers' wages, the owners were found liable to the workers for the difference between the two. Both parties then sought judicial review of the Administrator's decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2) (1988) ("APA"). *Soler,* 615 F.Supp. at 739–40.

On review, this court set aside the Administrator's determination that the housing was primarily for the benefit of the workers and granted summary judgment in their favor. *Id.* at 741, 749. Consequently, the owners were found liable for a total amount of $110,909.12. *See Soler v. G & U, Inc., et al.,* 628 F.Supp. 720 (S.D.N.Y. 1986); Judgment (April 17, 1986).

---

**1.** Legal Services has submitted two alternative dollar amounts for its attorney's fee award. The first request is for $338,768.84, which includes a 25% waiver of its total hours to account for any possible duplicative billing and a waiver of all fees incurred in preparation of its reply brief in the instant application. In the alternative, Legal Services requests $374,150.04, which represents compensation for all the hours expended, if the court reduces the award in any respect. *See* Pl. Brief in Support at 13, 18; Plaintiff's Reply Brief Supporting Attorney's Fees ("Pl. Reply") at 10; Supplementary Declaration of Dan Getman ("Supp. Getman Decl.") (sworn to April 16, 1992) ¶ 7. Thus, since the court is reducing the amount of the fee award,

*see infra,* the court assumes that Legal Services requests the alternative higher amount.

**2.** The FLSA and its accompanying regulations provide that the wage paid to an employee may include the reasonable cost to the employer of furnishing an employee with board, lodging, or other facilities. *See* 29 U.S.C. § 203(m); 29 C.F.R. §§ 531, 516. The workers' argument, however, was based on a regulation that provided that "[t]he cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.3(d)(1).

On appeal, the Second Circuit reversed this court's decision by finding that the court had exceeded its reviewing authority under the APA because the Administrator's decision was not arbitrary and capricious. *Soler*, 833 F.2d at 1104. The case was remanded to this court with the directive to "review the Administrator's determinations relating to the fair rental value of the housing facilities." *Id.* at 1105, 1111.

On remand, this court substantially affirmed the Administrator's decision.[3] *See Soler v. G & U, Inc., et al.*, 768 F.Supp. 452 (S.D.N.Y.1991). The workers were accordingly awarded back wages based on the difference between the amount that the owners had originally deducted from their wages and the fair rental value as determined by the Administrator. *See id.* Judgment was entered in the amount of $37,731.74.[4] Judgment (Sept. 9, 1991).

Subsequent to this court's opinion setting aside the Administrator's decision, but before the Second Circuit's reversal and remand, this court awarded Legal Services $123,832.27 in attorney's fees and costs for the work performed from 1978 to 1986. *Soler v. G & U, Inc., et al.*, 658 F.Supp. 1093 (S.D.N.Y.1987). The court determined this amount by dividing the litigation into two phases and using a different hourly rate for each period. *Id.* at 1102. In addition, the court later awarded Legal Services attorney's fees and costs, pursuant to Fed. Rule Civ.Proc. 11, for the time expended on responding to defendant Grippe House's argument in its 1991 motion for summary judgment. *Soler v. G & U, Inc.*, 138 F.R.D. 47, 49 (S.D.N.Y.1991).

Legal Services now applies for attorney's fees in the amount of $126,485.20 for work performed from October 1989 to April 1992. The work during this time period involved time spent on cross motions for summary judgment while the case was on remand from the Second Circuit, settlement discussions, preparation of wages computations for the new judgments, a 1991 appeal to the Second Circuit that was later withdrawn, and preparation of the instant attorney's fee application.[5] Legal Services also seeks the $123,832.27 in fees awarded in this court's 1987 opinion and a 100% enhancement of that award to account for the delay in receiving it. Thus, the total amount of attorney's fees sought by Legal Services is $374,149.74. Pl. Brief in Support at 13, 18.

## DISCUSSION

Section 216(b) of the FLSA provides that "the court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

## I. THE PREVAILING PARTY

■ A party must be a prevailing party to recover attorney's fees under the FLSA. *Hensley v. Eckerhart*, 461 U.S. 424, 433 & n. 7, 103 S.Ct. 1933, 1939 & n. 7, 76 L.Ed.2d 40 (1982). In order to fulfill this requirement, a party need only "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.; see also Texas State Teachers v. Garland Indep. School Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989).

■ Here, plaintiffs meet the threshold requirement of having prevailed in the instant litigation. They were awarded a judgment in the amount of $37,731.74, and

---

**3.** The only portion that the court rejected was the Administrator's denial of wage deductions for those housing units that had been found to be without proper heating units. *See Soler v. G & U, Inc., et al.*, 768 F.Supp. 452 (S.D.N.Y.1991).

**4.** This sum represents the total judgments against all defendants except G & U, Inc. and Charles Gratz Farms. Damages with respect to these defendants have not yet been determined.

*See* Stipulation (Sept. 4, 1991) (consenting to reference of remaining defendants to Magistrate Judge); Stipulation (Sept. 9, 1991) (same).

**5.** Although this period also involved the 1987 appeal to the Second Circuit and an unsuccessful petition for a writ of certiorari to the United States Supreme Court, Legal Services does not seek fees for any time spent on those items. Pl. Brief in Support at 12.

will receive an additional sum when the damages determination is made regarding the defendants G & U Inc. and Bierstine Farms. *See* Judgment (Sept. 9, 1991); Stipulation (Sept. 4, 1991) (consenting to refer to Magistrate Judge determination of damages owed by remaining defendants). Thus, because the plaintiff-workers succeeded on their claim that the defendant-owners violated the FLSA—and thereby achieved at least some of the benefit they sought in bringing suit—plaintiffs are clearly the prevailing parties in this litigation.

## II. THE LODESTAR

■ After resolving this threshold issue, the court must then decide what fee is reasonable. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The determination of a fair and reasonable fee award involves a two step approach. First, the court ascertains the number of hours each attorney reasonably spent on the case. *Id.* at 433, 103 S.Ct. at 1939. Next, the court multiplies that number by a reasonable hourly rate for each attorney. *Id.* The figure reached through this method is called the lodestar amount, and constitutes the "initial estimate of the value of a lawyer's services" in determining the final fee award. *Id.* The lodestar amount may then be enhanced or reduced based on the circumstances of the particular litigation. *See Pennsylvania v. Delaware Valley Citizens' Counsel,* 483 U.S. 711, 729–31, 107 S.Ct. 3078, 3088–90, 97 L.Ed.2d 585 (1987); *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984).

### A. *Number of Hours Reasonably Spent*

■ The requesting party in an attorney's fee application must submit contemporaneous time records for work performed, specifying the relevant dates, hours expended, and the nature of the work performed. *New York State Assoc. for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983). In determining how many hours were reasonable, the court has discretion to "trim fat" from, or otherwise reduce, the number of hours

claimed to have been spent on the case. *Id.* at 1146–47; *see also Browning v. Peyton,* 123 F.R.D. 75, 78–80 (S.D.N.Y.1988).

Accordingly, Legal Services has submitted affidavits setting forth the number of hours spent working on this case. *See* Affidavit of Dan Getman ("Getman Aff.") (sworn to Feb. 21, 1992); Affidavit of Charlotte Sibley ("Sibley Aff.") (sworn to Feb. 25, 1992); Affidavit of Walter Ruehle ("Ruehle Aff.") (sworn to Feb. 12, 1992); Declaration of Cynthia G. Schneider ("Schneider Decl.") (sworn to Feb. 13, 1992); Supplemental Declaration of Dan Getman ("Getman Supp.Decl.") (sworn to April 16, 1992); Supplemental Declaration of Charlotte Sibley ("Supp. Sibley Decl.") (sworn to April 10, 1992). The total number of hours claimed by each attorney are as follows:

| | |
|---|---|
| Dan Getman | 431.30 |
| Charlotte Sibley | 89.50 |
| Cynthia Schneider | 67.00 |
| Walter Reuhle | 53.55 |

*See* Getman Aff. at 21; Supp. Getman Decl. ¶ 7; Sibley Aff. at 6; Schneider Decl. at 3; Reuhle Aff. at 9. Defendants' objections regarding the number of hours claimed by Legal Services will be addressed below.

### (1) Inadequately Described Time Records

In order to evaluate the reasonableness of each time entry, the court must be informed of the purpose or subject matter of the work performed. *Soler,* 658 F.Supp. at 1099. Defendants contend that many of the descriptions provided by Legal Services are inadequate. *See* Memorandum of Law in Opposition to Plaintiff's Application for Attorney's Fees ("Def.Mem. in Opp.") at 19–21; Affidavit of Edward F. Beane in Opposition to Application for Legal Fees Pursuant to 29 U.S.C. § 216(B) ("Beane Aff. in Opp.") (sworn to March 31, 1992) ¶ ¶ 23–29. Although Legal Services has submitted two supplemental affidavits in order to more fully describe the time entries in question, Mr. Getman's is the only one that complies with *Carey*'s requirement that the hours claimed be based on contemporaneous time records. *See Car-*

*ey*, 711 F.2d at 1147–48; Supp. Getman Decl. ¶ 5; Sibley Supp.Decl. ¶ 2. Furthermore, although Mr. Getman's supplemental affidavit sufficiently clarifies most of the entries in question, some of Mr. Getman's entries still remain unclear. Thus, because the following hours are not sufficiently described, they will be subtracted from each attorney's total number of hours:

| Attorney | Date | Hours | Activity |
|---|---|---|---|
| **Getman** | 2/11/92 | .70 | letters to Paul Kellar |
| | | .10 | telephone call to Cynthia Schneider ["CS"] |
| **Total** | | .80 | |
| **Sibley** | 11/13/90 | .50 | draft letter to clients |
| | 7/25/91 | .25 | telephone call to Judge Tenney's chambers ["chambers"] |
| | 7/30/91 | .25 | telephone call to Edward Beane ["EB"] |
| | 7/31/91 | 2.75 | Myruski calculations |
| | | .50 | telephone call to CS, MLAP |
| | 8/7/91 | .25 | telephone call to H.S. Reilly, prior FLSNY attorney |
| | 8/8/91 | .25 | telephone call to Steve Haber ["SH"] |
| | 8/8/91 | .50 | telephone call to EB |
| | 8/9/91 | .25 | telephone call to EB |
| | | .25 | telephone call to chambers |
| | | .25 | telephone call to EB |
| | 8/20/91 | .25 | telephone call to EB |
| | 8/22/91 | .25 | telephone call to EB |
| | | .25 | telephone call to EB |
| | 8/23/91 | .25 | telephone call to Keane & Beane ["K & B"] |
| | | .50 | proof client letter |
| | | .25 | telephone call to K & B |
| | 8/27/91 | .75 | mailing to G & U plaintiffs |
| | 8/28/91 | .75 | telephone call to K & B |
| | 8/29/91 | .25 | telephone call to K & B |
| | 9/24/91 | .25 | telephone call to K & B |
| | | .25 | telephone call to SH |
| | 9/25/91 | .25 | telephone call to K & B |
| | 9/28/91 | .25 | draft letter to K & B |
| | | .25 | review client letters |
| | | .25 | review client letters |
| | 10/2/91 | .25 | telephone call to chambers |
| | 10/29/91 | .25 | telephone call to SH |
| | 11/14/91 | .25 | draft letter to K & B |
| | 11/19/91 | .25 | telephone call to chambers |
| **Total** | | 12.00 | |
| **Ruehle** | 2/8/90 | .30 | phone calls to Dan Getman |
| **Total** | | .30 | |

Getman Aff., Attorney Hours, at 20; Sibley Aff., Attorney Hours, at 1, 3–6; Ruehle Aff., Attorney Hours, at 8. Accordingly, Getman's hours will be reduced by .80, Sibley's by 12.00, and Reuhle's by .30.

■ Defendants also assert that some of the Legal Services attorneys have improperly grouped together several activities under one time entry, without allocating the time spent on each. *See* Beane Aff. in Opp. ¶¶ 27–29. As the court stated in its prior fee opinion in this case, the commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities. *Soler*, 658 F.Supp. at 1099. Thus,

the court agrees with defendants' objection and will therefore exclude from each attorney's total hours the following entries containing commingled activities:

| Attorney | Date | Hours | Activity |
|---|---|---|---|
| **Getman** | 2/6/90 | 4.30 | travel to law library—research on market valuation |
| | 7/25/90 | 1.00 | research . . . telephone call to Thomas, Hartnett, review files, payroll records |
| | 11/9/90 | 2.30 | preparation of s/j brief on market value and research (editing and writing) preparation to send to others for review |
| | | 3.70 | preparation s/j brief—APA standard research and travel to law library |
| | 4/30/91 | 3.70 | final editing of s/j brief on statute of limitation; telephone call to CS re statute of limitation suggested changes |
| | 5/9/91 | 1.20 | preparation of outline of reply brief re fair market value, review of all briefs |
| | | .50 | preparation of outline of reply brief re fair market value, review of all briefs |
| | 5/20/91 | 3.00 | final editing of s/j reply brief (fair market value); telephone call to CS re her suggestions for changes |
| | 5/21/91 | .80 | final editing of brief, prepare table of contents, change our letters to reflect new date of service |
| | 6/11/91 | 2.20 | prepare sur-reply, letter in response to defendant growers' s/j motion, outlining new arguments made by growers and writing argument on good faith, and occupancy of units at time of inspection |
| | 11/4/91 | .80 | reading rules on appellate procedure; telephone call to clerk re filing fee |
| | 12/20/91 | 1.50 | calculation of time records, proofing of hours. Telephone call to Jim Schmidt re Wally's hours that might have been kept in Rochester |
| **Total** | | 25.00 | |
| | | | |
| **Schneider** | 11/28/90 | 3.00 | review, research edit first draft of summary judgment ["s/j"] brief |
| | 11/29/90 | 3.00 | [same] |
| | 12/5/90 | 3.50 | [same]; draft memo on s/j brief |
| | 1/2/91 | 2.75 | review, research and edit new draft of s/j brief |
| | 1/3/91 | 3.25 | [same] |
| | 1/4/91 | 2.50 | [same] |
| | 1/7/91 | 2.00 | [same] |
| | 1/9/91 | 3.25 | [same] |
| | 1/10/91 | 1.50 | [same] |
| | 2/5/91 | 3.00 | research statute of limitations issue/prepare and send letter to DG |
| | 2/7/91 | 3.00 | [same] |
| | 8/6/91 | 1.00 | review law clerk's memo on attorneys fees' issues, research, draft letter to Charlotte Sibley on strategy |
| **Total** | | 31.75 | |

Getman Aff., Attorney's Hours; Schneider Decl., Exh. A. Accordingly, Getman's hours will be reduced by 25.00 and Schneider's by 31.75.

**(2) Time Improperly Billed to Defendants**

Defendants next argue that Legal Services has improperly included time spent on matters concerning defendant Peat–Gro

Farms, a defaulting defendant who never appeared in the administrative proceeding or in this litigation. *See* Def. Memo in Opp. at 18; Beane Aff. in Opp. ¶ 19. The court agrees with defendants, and therefore, will not compensate Legal Services for any time devoted to defendant Peat–Gro Farms. Accordingly, Mr. Getman's hours will be reduced by 6.85 hours. *See* Getman Aff., Attorney Hours, at 1, 17–18.

Defendants also object to the 5.30 hours claimed by Mr. Getman in connection with the Grippe House and Bierstine Camp II defendants because this time was already included in the court's fee award in connection with Rule 11 sanctions against defendants. *See* Beane Aff. in Opp. ¶ 25; *Soler,* 138 F.R.D. 47. Although Legal Services correctly points out that the court's 1991 award pertained only to the Grippe House, and not to Bierstine Camp II, *see Soler,* 138 F.R.D. at 49, Mr. Getman's entries do not segregate the time spent on each. Accordingly, his hours will be reduced by 5.30. *See* Getman Aff., Attorney Hours, at 9.

Defendants also argue that they should not have to pay for the time that Legal Services spent on replying to the Government's brief in the 1991 cross motions for summary judgment. *See* Def.Mem. in Opp. at 18; Beane Aff. in Opp. ¶ 20. Legal Services contends that because the arguments raised by the Government and the owners were identical, the workers replied to both in a single reply. *See* Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Pl. Reply") (May 23, 1991). The court, however, agrees with defendants that regardless of whether Legal Services' work responding to the owners and the Government was identical, the owners should not have to pay for the entire amount. Rather, the owners should only be made to pay for work pertaining solely to them. The court, therefore, will exclude both the hours devoted solely to responding to the Government and half of the hours spent on Legal Services' Reply to Defen-

dants' Opposition Motion for Partial Summary Judgment. Accordingly, Mr. Getman's hours will be reduced by 12.1; Ms. Sibley's by 1.38; and Ms. Schneider's by 5.0. *See* Getman Aff., Attorney's Hours, at 13; Sibley Aff., Attorney's Hours, at 2; Schneider Decl., Attorney's Hours, at 2–3.

Defendants also object to Legal Services including time devoted to non-legal functions, such as computations of unpaid wages and interest, travel time, telephone conferences with court personnel and attorneys regarding scheduling, photocopying, collating and mailing papers, and "fixing a computer problem." *See* Beane Aff. in Opp. ¶ 22. As stated in the court's previous Opinion, however, "it is not necessarily unreasonable for counsel to perform certain tasks such as calculating or compiling of exhibits." *Soler,* 658 F.Supp. at 1099–1100. Here, with one exception, there is no indication that the non-legal functions performed by the Legal Services attorneys were unreasonable, and thus, the time spent performing those functions will be compensated. The one exception is Mr. Getman's entry of 3.50 hours for "fixing the computer problem re identifying current drafts and deleting erroneous drafts." Getman Aff., Attorney Hours, at 8. This problem was apparently caused by the support staff's mislabeling a draft of a brief that could only be remedied by Mr. Getman since he was its author. *See* Getman Supp. Decl. ¶ 4. While such problems are unfortunate and sometimes unavoidable, defendants should not be billed for the non-legal mishaps that occur in Legal Services' offices. Accordingly, Mr. Getman's hours will be reduced by 3.50 hours.

In addition to defendants' objections discussed above, the court is of the view that it would be unfair and unreasonable to compensate Legal Services for the time spent by their attorneys organizing files and seeking adjournments and extensions. Thus, the following hours will not be included in the fee award:

| Attorney | Date | Hours | Activity |
|----------|------|-------|----------|
| **Getman** | 1/2/90 | .05 | telephone call to Judge's clerk re adjournment |
| | 1/3/90 | .05 | telephone call to EB re adjournment and schedule call for Thursday |
| | 1/31/91 | .50 | draft letters of extension of time to file papers |
| | 5/21/91 | .10 | telephone calls with K & B re extension |
| | 5/22/91 | 1.20 | refiling *Soler* materials after completing briefing |
| | 7/2/91 | .30 | telephone call with EB for extension (add on law clerk A. Eisemann) |
| | 12/10/91 | 1.00 | organizing files |
| **Total** | | 3.20 | |
| | | | |
| **Sibley** | 11/16/90 | .25 | organize file |
| **Total** | | .25 | |

Accordingly, Getman's hours will be reduced by 3.20, and Sibley's by .25.

---

### (3) Duplicative Time

Defendants also argue that many of the hours claimed for work performed on the most recent cross motions for summary judgment are duplicative of work performed on previous motions. *See* Def. Mem. in Opp. at 18–19, 21–22. While the court agrees with defendants that many of the points briefed in the 1991 summary judgment motion were already briefed in the 1984 summary judgment motion, the court also recognizes that the first motion for summary judgment was filed seven years before the second motion, and thus, a significant amount of new research and writing was necessary. *See* Brief in Support of Motion for Partial Summary Judgment Brought by Plaintiffs in First Seven Actions (August 30, 1984) ("Pl.1984 Summ.J. Brief") at 1–32, 35–44; Plaintiffs' Memorandum of Law in Support of Partial Summary Judgment (Jan. 15, 1991) ("Pl. 1991 Summ.J. Brief") at 1–28. Thus, the court finds that each attorney's hours spent on research and writing the briefs in support of the 1991 summary judgment motion should be reduced by one-third.[6] Accordingly, Mr. Getman's hours will be reduced by 58.99, Ms. Sibley's by 7.17, Ms.

Schneider's by 4.50, and Mr. Reuhle's by 2.53.

### (4) Time Spent on Fee Application

Defendants assert that the number of hours Legal Services spent on the fee application is excessive, and should therefore be reduced. *See* Def.Mem. in Opp. at 16–18. Furthermore, defendants maintain that the time spent on a fee application should not exceed 5% of the total hours claimed. *Id.*

It is well settled law that the time spent on an attorney's fee application is compensable. *Gagne v. Maher,* 594 F.2d 336 (2d Cir.1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). While there is no rigid rule as to exactly how many of the hours are compensable, the number of hours must be reasonable. *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702 (2d Cir.) (time spent on fee was 24% of total time claimed), *reaff'd and extended,* 832 F.2d 743 (2d Cir.1987); *Mantel v. Niagara Mohawk Power Corp.,* 1986 WL 644 (S.D.N.Y.1986) (time spent on fee application reduced from 35% to 8% of total time claimed).

Here, Legal Services claims to have spent 70.60 hours [7] on its fee application, an amount which is 11% of the 641.35 hours

---

**6.** The total from which the one-third is being subtracted is the total number of hours claimed by each attorney for research and writing of the summary judgment motion minus the reductions discussed *supra.*

**7.** This figure includes 27.10 hours that Legal Services spent preparing its Reply Brief. *See* Plaintiffs' Reply Brief in Support of Attorneys' Fees ("Pl. Reply") at 10; Supp. Getman Decl. ¶ 7.

claimed for the 1989–92 period in question.[8] The court has reviewed the time records and concludes that, with the exception of 2.50 hours claimed by Mr. Getman, the hours spent on the fee application were reasonable.[9] Given this reduction, the total number of hours spent on the fee application is 67.90—approximately 10.6% of the total fee requested. *Cf. Williamsburg Fair Housing Comm'n v. Ross–Rodney Housing,* 599 F.Supp. 509 (S.D.N.Y.1984) (hours compensated for time spent on fee application was 9.6% of total number of hours claimed).

(5) Total Number of Hours

The court finds, therefore, that the attorneys will be compensated for the following hours: Mr. Getman for 313.06 hours; Ms. Sibley for 68.70 hours; Ms. Schneider for 25.75 hours; and Mr. Reuhle for 50.72 hours.

B. *Reasonable Hourly Rate*

■ Regardless of whether a plaintiff is represented by private or non-profit counsel, the rate of compensation used in an attorney's fee award should be set by referring to prevailing market rates in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson,* 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 1547 & n. 11, 79 L.Ed.2d 891 (1984). The relevant community for rate-setting purposes is the judicial district in which the trial court sits. *In re Agent Orange Product Liability Litigation,* 818 F.2d 226, 232 (2d Cir.1987), *cert. denied sub nom. Krupkin v. Dow Chemical Co.,* 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988); *Shlomchik v. Richmond 103 Equities Co.,*

763 F.Supp. 732, 743–44 (S.D.N.Y.1991) (awarding Philadelphia attorney higher New York City rate because case was litigated in New York City).

Defendants and Legal Services disagree as to which community is the relevant one in this case—New York City or the Mid–Hudson Valley region of New York State, both of which are located in the Southern District of New York. Defendants maintain that even though the case was litigated in New York City, the relevant community for rate-setting purposes is the Mid–Hudson Valley area because that is where Legal Services maintains its offices. Legal Services, however, contends that no private law firm from the Mid–Hudson Valley area has the expertise or capability of representing large numbers of non-English speaking migrant farmworkers. *See* Pl. Brief at 14; Affidavit of Paul Kellar, former President of the Ulster County Bar Association (sworn to Feb. 12, 1991) ¶¶ 3–4. Legal Services, therefore, argues that the hourly rates of Mid–Hudson Valley law firms will not accurately establish the prevailing rate for this type of case, and has provided the court with market rates of law firms located in New York City that do perform this type of work. *See* Pl. Brief at 14; Notice of Motion for Attorney's Fees, Exh. D; Affidavit of Ira Cure ("Cure Aff.") (sworn to Feb. 14, 1992).

Because defendants have provided no evidence to the contrary, the court accepts Legal Services' conclusion that no private law firm in the Mid–Hudson Valley region would be willing or able to litigate a fourteen year case on behalf of over 100 migratory farmworkers, most of whom speak only Spanish. Thus, based on the experience of each attorney in this case and on

---

**8.** Legal Services maintains that it spent less than 2% of the total number of hours claimed on the fee application. *See* Pl. Reply at 9. In arriving at this figure, Legal Services has included, as a part of the total number of hours claimed, the period from 1978 to 1987. *Id.* The work performed during those years, however, was either accounted for in the court's previous award of attorney's fees, or consisted of work that Legal Services chose not to claim, i.e., the time spent on the appeal to the Second Circuit and to the Supreme Court. These hours, therefore, should not be considered as a part of the total number of hours in calculating what percent of that

total was spent on the present fee application. *See Soler,* 658 F.Supp. at 1096.

**9.** For the reasons discussed *supra,* the court finds that the following items are not properly billable to defendants: (1) .20 hours spent on 1/29/92 preparing a letter seeking extensions, (2) 1.50 hours spent on 12/20/91 performing several different tasks, and (3) vague entries on 2/11/92 for .70 hours for "letters to Paul Kellar," and .10 hours for "telephone call for Cyndy Schneider." *See* Getman Aff., Attorney Hours, at 19, 20.

the prevailing rates of a Manhattan lawyer specializing in labor law, the attorneys will be compensated at the following hourly rates:

| | |
|---|---|
| Getman | $185 |
| Sibley | $185 |
| Schneider | $250 |
| Reuhle | $250 |

*See* Getman Aff. ¶¶ 1–8; Sibley Aff. ¶¶ 1–13; Schneider Decl. ¶¶ 1–4; Reuhle Aff. ¶¶ 1–18; Cure Aff. ¶¶ 1–6.[10]

The compensation for each attorney, therefore, will be the following:

| Attorney | Hours | | Hourly Rate | | Award |
|---|---|---|---|---|---|
| Getman | 313.06 | × | $185 | = | $59,916.10 |
| Sibley | 68.70 | × | $185 | = | $12,709.50 |
| Reuhle | 50.72 | × | $250 | = | $12,680.00 |
| Schneider | 25.75 | × | $250 | = | $6,437.50 |
| Total | | | | | $91,743.10 |

The lodestar figure for the 1989–92 period, therefore, is $91,743.10.

### III. DOWNWARD ADJUSTMENT

■ After the court determines the lodestar figure, it must then decide whether to adjust that amount upward or downward according to the 'results obtained' at the end of the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1982). The award will be reduced only if (1) the plaintiff failed to prevail on claims that were unrelated to the common core of facts or legal theories, or (2) the plaintiff failed to achieve "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *See id.* at 434–35, 103 S.Ct. at 1940. However, if the plaintiff achieved only partial or limited success, the lodestar figure may be excessive, "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436, 103 S.Ct. at 1941.

■ Here, although plaintiffs were the "prevailing parties" for the purposes of the statutory threshold, their success was limited, since they ultimately failed to prevail on the issue of whether the housing in question was primarily for the benefit of the owners. Thus, because this court's 1987 fee award was based in part on their prevailing on that issue, the award should be reduced. The court concludes, therefore, that because Legal Services devoted approximately 5% of its 1984 briefs on this argument, the 1987 fee award should be reduced by 5%. *See* Pl.1984 Summ.J. Brief at 74–78. Accordingly, the lodestar figure for the 1978–86 period is reduced to $117,640.67.

### IV. ENHANCEMENT FOR DELAY

Legal Services requests a 100% enhancement of the fee award covering the 1978–86 period of this litigation in order to compensate for the delay in receiving the award. *See* Pl. Brief in Support at 11–12. Defendants argue, however, that the award for the 1978–86 period already accounts for any possible delay because the court divided the litigation into two phases, and applied present, rather than historical, rates to each phase. *See* Def.Mem. in Opp. at 31–33.

In general, when attorneys experience a delay in receiving their fees, the fee award

---

**10.** The court has reviewed defendants' additional arguments pertaining to rates and finds them to be without merit.

should compensate them for inflation and the interest they would have earned on their award. *Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 564 (7th Cir. 1990). Such delay may be compensated in a number of different ways, depending on whether the award was based on current or historical hourly rates. Where services have been rendered over a long period of time, the use of current rates usually takes into account inflation and the cost of money for delay in payment, whereas the use of historical rates requires a separate accounting for inflation by using the Consumer Price Index, the prevailing interest rate, or an increase of the lodestar figure. *Van Gemert v. Boeing Co.*, 516 F.Supp. 412, 417 (S.D.N.Y.1981); *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1296, 1328 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir.1987).

Here, because the court—at the time of its prior fee opinion—awarded Legal Services the current rates for the 1978–86 period, it concluded that Legal Services should not receive an enhancement of this award. *See Soler*, 658 F.Supp. at 1100–02. However, because the case was reversed and remanded, Legal Services never received the benefit of the court's 1987 award.[11] The court concludes, therefore, that although the rates used in 1987 were current at the time the court issued the first fee opinion, they are now historical and should be enhanced to account for the five year delay. Thus, the fee award for the period 1978–86 is enhanced to its present value of $146,544.98. *See* Consumer Price Index, U.S. City Average (base year of March 1987).

## V. APPORTIONMENT

Defendants maintain that the attorney's fees in this case should be apportioned among all the defendants according to each defendant's amount of liability. *See* Def. Mem. in Opp. at 41–43. Legal Services, however, contends that the fees should not be apportioned because all the issues litigated pertained to every defendant, and thus, the same amount of work would have been required, regardless of the number of defendants. *See* Pl. Reply at 26–27.

The court has wide discretion in choosing whether to apportion an award of attorney's fees among several defendants or to hold the defendants jointly and severally liable for the entire award. *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir.1990). However, defendants can be held jointly and severally liable for attorney's fees only if they were jointly and severally liable for the underlying judgment. *See id.* If defendants were not jointly and severally liable, then the fee award must be apportioned according to their relative liability. *See id.*

Here, with the exception of defendants G & U, Inc. and Charles Gratz Farms, the defendants in this case were not jointly and severally liable for plaintiffs' back wages. *See* Judgment, 78 Civ. 6252 (April 17, 1986); Judgment, 78 Civ. 6252 (Sept. 9, 1991). In fact, the Judgments list—defendant by defendant—the exact amounts for which each is liable to each individual plaintiff. *See id.* The court, therefore, will apportion the attorney's fees among the defendants according to their relative amounts of liability as reflected in the Judgments that have been entered. Therefore, each of the defendants listed below is liable to Legal Services for the following percentages of the total attorney's fee award:

| | |
|---|---|
| Ray Myruski Farms | 21.83% |
| Bierstine Farms | 50.01% |
| Cedar Valley Growers, Inc. | 12.22% |
| WKW Farms, Inc. | 4.50% |
| G & U, Inc. and Charles Gratz Farms | 11.44%[12] |

## CONCLUSION

█ For the reasons set forth above, the court awards Legal Services attorney's fees in the amount of $238,288.08: $146,544.98 for the 1978–86 period (consisting of a five percent reduction of the court's 1987

---

**11.** Legal Services did not receive this award because the underlying summary judgment decision was appealed and remanded to this court for further review of the Administrator's findings.

**12.** This percentage is based on an estimate of unpaid wage computations for G & U, Inc. and Charles Gratz pursuant to a formula to which the parties have agreed. *See* Def.Mem. in Opp. at 43 & n. 11.

award of $123,832.27, enhanced to its present value); and $91,743.10 for the 1989–92 period. Defendants are liable for this amount in the respective percentages discussed above. Submit judgment in conformity herewith within 30 days of the filing of this Opinion.

So Ordered.